# UNITED STATES BANKRUPTCY COURT

**Eastern District of Virginia**
**Norfolk Division**

|  |  |  |
|---|---|---|
| *In re:* | ) | |
| | ) | |
| TRACY MARIE SAVAGE, | ) | Case No. 10-71227-FJS |
| | ) | |
| *Debtor.* | ) | |
| | ) | |
| TRACY MARIE SAVAGE, | ) | |
| *Plaintiff,* | ) | APN 12-07033-FJS |
| | ) | |
| v. | ) | |
| | ) | |
| CAROLYN L. CAMARDO, | ) | |
| CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| *Defendant.* | ) | Chapter 7 |
| | ) | |

## Memorandum Opinion

This matter comes before the Court upon the cross Motions for Summary Judgment, filed by the Plaintiff, Tracy Marie Savage ("Savage"), and by the Defendant, the Chapter 7 Trustee in the underlying bankruptcy case, Carolyn L. Camardo, Esq. (''Trustee''). The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). Venue is proper pursuant to 28 U.S.C. § 1409(a). Upon consideration of the pleadings and memoranda submitted by each party, the Court makes the following findings of fact and conclusions of law. For the reasons more fully explained below, the Court finds that the Trustee's Motion for Summary Judgment should be granted.

## I.      Procedural History of the Bankruptcy and Adversary Proceeding

Savage, by counsel, filed a voluntary petition for relief under Chapter 7 of Title 11 of the

United States Code on March 17, 2010 (the "Filing Date" or "Petition Date").[1] Carolyn L.

Camardo, Esquire, was appointed Chapter 7 Trustee. Disclosed in Savage's Schedule A is the

asset that forms the basis of this adversary proceeding. Savage scheduled real property located at

23424 Lankford Highway, Cape Charles, Virginia 23310 (the "Property"), as an asset of the

bankruptcy estate. Savage listed the Property as jointly owned by herself and her ex-husband,

Joseph C. Black ("Black"). Savage valued her interest in the Property at $321,000.00, and

represented that it was encumbered by a first position deed of trust in favor of Chase Mortgage

with a balance due of approximately $147,000.00. Savage claimed an exemption in the Property

of $1.00 pursuant to Virginia Code § 34-4. Savage further indicated on the Chapter 7 Individual

Debtor's Statement of Intention that it was her intent to surrender the Property to Chase

Mortgage.[2]

Savage's Section 341 Meeting of Creditors was held on April 13, 2010, and adjourned to

April 29, 2010. The Trustee filed a Request for Asset Notice on April 30, 2010. On May 3, 2010,

Savage filed Amended Schedules D and H. Savage added the judgment lien of Dale Truitt

Berrett, Esquire ("Berrett"), of Kaufman & Canoles, P.C., in the amount of $16,987.53 to

Schedule D. On June 8, 2010, the Trustee filed an Application to Employ Real Estate Broker,

which was approved by order entered on June 10, 2010. Savage received her discharge on June

21, 2010.

---

[1] Citations to Savage's main case, *In re Savage*, No. 10-71227-FJS (Bankr. E.D. Va. 2010), will hereinafter be
referred to as *In re Savage*. Citations to the adversary proceeding, *Savage v. Camardo*, No. 10-71227, Adv. No. 12-
07033-FJS (Bankr. E.D. Va. Mar. 3, 2012), will hereinafter be referred to as *Savage v. Camardo*.
[2] *In re Savage*, ECF No. 1, Vol. Pet.

Over a year later, on September 26, 2011, the Trustee filed a Motion to Sell, asking the

Court to allow the sale of the Property, free and clear of liens, pursuant to 11 U.S.C. § 363 and

Rule 6004 of the Federal Rules of Bankruptcy Procedure. The Motion sought the Court's

approval for the sale of the Property for $255,000.00 to an unrelated third party; payment of the

claims of Chase Mortgage and Berrett; payment of the 6 percent realtor's commission; and

payment of typical closing costs. The motion was unopposed and granted by order entered

October 27, 2011. Following the entry of this order, Black, by counsel, filed an Application for

Administrative Expenses (the "Application"), in which he sought reimbursement of "actual and

necessary expenses . . . which payments provided a benefit to the bankruptcy estate," including

mortgage payments, real estate taxes, and insurance.[3] Savage, although still represented by her

then counsel of record, John Tripp, Esquire, filed an objection to the Application on November

8, 2011 *pro se*. The Trustee also objected to the Application on November 9, 2011.

While the Application was pending, closing on the sale of the Property occurred, and the

Trustee filed a Report of Sale of Real Property on November 10, 2011. In that Report, it was

disclosed that the Trustee received net proceeds from the sale of the Property in the amounts of

$18,456.47 for Savage's share and $59,976.35 for the amount due from Black to Savage under

the Final Divorce Decree.[4] Savage filed a Motion to Recover Delayed Awarded Settlements,

asserting, *inter alia*, that the funds being held by the Trustee were not an asset of the bankruptcy

estate and belonged to her.[5] On November 23, 2011, Black filed a response to the objections to

the Application and to the Motion to Recover Delayed Awarded Settlements, asserting that the

---

[3] *In re Savage*, ECF No. 27.
[4] *In re Savage*, ECF No. 35.
[5] *In re Savage*, ECF No. 42.

Trustee had no grounds to hold the funds from the sale of the Property and that Black's expenses were valid expenses that benefited the bankruptcy estate.[6]

A hearing was held on December 6, 2011 before the Honorable Stephen C. St. John on Black's Application. At that hearing, Judge St. John found that Black's application for reimbursement of expenses would be treated as a proof of claim for administrative expenses, and an order was entered on January 9, 2012 to that effect. The Order did not resolve Savage's Motion to Recover Delayed Awarded Settlements.[7]

Following the entry of the Order, Savage sought leave of the Court to retain Kelly M. Barnhart, Esquire of the firm Roussos, Lassiter, Glanzer & Barnhart, PLC. Ms. Barnhart represented Black in prior proceedings in this case before the Court, but those matters having concluded, Savage's employment of Ms. Barnhart was approved without opposition and by consent order entered March 6, 2012.[8] Following Ms. Barnhart's retention by Savage, Schedule B was amended to include, for the first time, "Property settlement right to funds from Joseph Black, which had not yet vested as of the date of the debtor's original filing, based upon a separation agreement dated September 19, 2005."[9] On the same day, counsel for Savage filed the instant adversary proceeding, seeking declaratory judgment that the $59,976.53 in funds held from the proceeds of the sale of the Property was not property of the bankruptcy estate.

The Trustee responded generally to the Complaint on April 18, 2012. Savage then filed a Motion for Summary Judgment and Memorandum in Support on May 3, 2012. The Trustee filed a separate Motion for Summary Judgment and Memorandum in Support on June 19, 2012.

---

[6] *In re Savage*, ECF No. 45.
[7] *See In re Savage*, ECF No. 51, Order Granting App. Admin. Exp.
[8] *In re Savage*, ECF No. 59.
[9] *In re Savage*, ECF No. 61, Amend. Sched. B.

Savage responded to the Trustee's motion and filed a Reply Memorandum in Support of Motion for Summary Judgment on July 5, 2012. Joint Stipulations of Fact were filed on August 14, 2012, and later that day the Court heard arguments on the motions. At the conclusion of the hearing, the Court permitted the parties until September 11, 2012 to supplement their pleadings. Both parties filed supplement briefs on September 11, 2012. The Court afforded the parties the opportunity to present additional evidence on their arguments, but the parties later stipulated that no further hearings or trial was necessary and the Court took the matter under advisement.

## II.    Arguments

This Court must decide whether the funds held by the Trustee from the sale of the Property are property of the bankruptcy estate. In reaching its decision, the Court carefully examined the Final Decree of Divorce, Separation Agreement, and the arguments put forward by Savage and the Trustee. A brief summary of each follows.

### A.  The Final Decree of Divorce

The Circuit Court of the County of Northampton Virginia entered the Final Decree of Divorce (the "Decree") dissolving the marriage of Savage and Black on December 18, 2006. The Decree "affirmed, ratified and incorporated, but [did] not merge[]" the Separation Agreement (the "Agreement") reached by the parties on September 19, 2005, into the Decree.[10] The Agreement contains the provisions that are the focus of this adversary proceeding.

The Agreement contained a provision outlining the disposition of the Property. Under the Agreement, Savage and Black were "to list the [Property] for sale immediately, time being of the

---

[10] *Savage v. Camardo*, Compl., Ex. B.

essence . . . ." The Agreement stated "the proceeds shall . . . be divided equally (50/50) between the parties, subject to payments to [Savage] from [Black's] share of the proceeds as set forth in this Agreement." Regarding those payments, the Agreement stated, "[Black] agrees to pay [Savage] the sum of $57,000" constituting Savage's share of the couple's businesses. The Agreement further provided, "[Black] shall pay to [Savage] $2,600" from Black's share of the proceeds from the sale of the Property for the cash value of certain life insurance policies.[11] Per the Decree and incorporated Agreement, Savage was due a total of $59,600.00 from Black following the sale of the Property. The Agreement did not impose a time limit within which to effectuate the sale of the Property.

### B.  The Complaint and Response

In the adversary proceeding, Savage asserted two principal arguments. First, she argued that because the Trustee's Motion to Sell did not disclose that the Trustee would be claiming the proceeds of the sale due to Savage by Black pursuant to the Decree, the Trustee was barred from claiming the proceeds as property of the bankruptcy estate. Savage next argued that "Black's obligation to pay a part of the proceeds of the sale of the Property to [Savage] arose as part of the Agreement and the *condition precedent* to the requirement of making payment did not arise until more than 180 days after" Savage filed her petition for relief.[12] Savage further argued that the obligation of Black to pay Savage did not exist "independent of the occurrence of the condition precedent of the sale of the Property."[13] Savage concluded by arguing that because the sale of the Property did not occur until fifteen months after the Filing Date, which itself occurred more than

---

[11] *Savage v. Camardo*, Compl., Ex. A 7.
[12] *Savage v. Camardo*, Compl. ¶19 (emphasis added).
[13] *Id.* at ¶20.

6

five years after the Agreement was made, the proceeds of the sale of the Property were not

property of the bankruptcy estate under 11 U.S.C. § 541(a)(5).

The Trustee argued that the Agreement created a pre-petition right of Savage to collect

funds from Black. Because the Agreement created rights for the benefit of Savage pre-petition,

the Trustee argued that these rights became an asset of the bankruptcy estate when Savage filed

her petition. The Trustee further argued that since the Agreement was entered into pre-petition,

and that since Savage's right under the Agreement were created pre-petition, Savage's reliance

on § 541(a)(5) is "misplaced."[14]

### C.  Savage's Motion for Summary Judgment

Savage was the first to move for summary judgment. In doing so, she reiterated her

argument that § 541(a)(5)(B) governs the disposition of the funds. Savage asserted that since the

Property sold more than 180 days after the Filing Date, Black's obligation to pay Savage was not

triggered, and therefore the funds were not an asset of the bankruptcy estate. Savage also

asserted that "there were no affirmative steps that [Savage] . . . could have taken to compel

payment under the Agreement" prior to the date on which the Trustee sold the Property.[15]

Savage analogized the present case to one of a debtor being "a named legatee of a

specific bequest under a will or a named beneficiary of a life insurance policy" and the testator

(named insured) passing away (or dying) more than 180 days after the filing of the petition. In

such situations, Savage argued, a "contingent, future right to a distribution from a decedent's

---

[14] *Savage v. Camardo*, ECF No. 4, Resp. ¶23.
[15] *See Savage v. Camardo*, ECF No. 5, Mot. Summ. J. 5.

estate of the specific bequest or a contractual payment from the insurance company" is created.[16]

Therefore, the legacy would be excluded from the bankruptcy estate pursuant to §§ 541(a)(5)(A)

and (C) so long as the contingency (the death of the testator/insured) occurred more than 180

days after the filing of a petition. Savage argued that in both the instant circumstance and the

hypothetical situation, the right to receive the funds was created by a pre-petition document, but

the condition precedent did not occur until a date more than 180 days post-petition. Savage

contends that "it does not matter when the right to a future payment is created; it matters only if

the right becomes enforceable within 180 days of the filing of the petition."[17]

In support of her argument, Savage relied upon *Smith v. Moody* (*In re Moody*), 837 F.2d

719 (5th Cir. 1988), and *Smith v. Baydush* (*In re Baydush*), 171 B.R. 953 (E.D. Va. 1994).

*Moody* concerned a Chapter 11 trustee's attempt to reach funds disbursed from a spendthrift trust

more than 180 days after the filing of the petition. *In re Moody*, 837 F.2d. at 721-22. The Court

first noted that spendthrift trust income disbursed within 180 days of the filing of the bankruptcy

petition was included in the bankruptcy estate pursuant to § 541(a)(5)(A). *Id.* at 723. The Court

then held that disbursements made after the 180-day window of § 541(a)(5)(A), while excluded

from the bankruptcy estate, *were* subject to claims from post-petition creditors such as the

trustee, who was collecting on a judgment from the bankruptcy court that arose post-petition. *Id.*

*Baydush* also involved a trustee's attempt to reach the debtor's contingent remainder

interest held in two spendthrift trusts. *In re Baydush*, 171 B.R. at 955-56. The United States

District Court for the Eastern District of Virginia in reversing the bankruptcy court first

examined the provisions of the trust instrument and held that the debtor's contingent remainder

---

[16] *Id.*
[17] *Id.*

8

interest was a spendthrift trust. *Id.* at 958. The Court then noted that § 541(c)(2) operated to exclude the contingent remainder interest in the trust from the bankruptcy estate because that interest was held in a spendthrift trust, which by its very definition was non-transferable. *Id.* The Court then held that only those disbursements that would occur within the 180-day window found in § 541(a)(5)(A) would be property of the bankruptcy estate. *Id.* However, since that window had closed and no trust disbursements were made, the debtor was entitled to the 'fresh start' of the bankruptcy code and his property would not be subject "to the undue burden of attachment . . . for an indefinite period of time in contravention of this principle." *Id.* In reliance on *Moody* and *Baydush*, Savage closed her argument by arguing that "property can only be considered property of the [bankruptcy] estate if the conditions set in the Agreement had been met within the 180 days of the filing."[18]

### D.  The Trustee's Motion for Summary Judgment

The Trustee's Memorandum of Law in support of her Motion for Summary Judgment first examined § 541 and the meaning of "property of the estate." The Trustee cited the Honorable Judge Smith's decision in *Stackhouse v. Plumlee* in support of her argument that bankruptcy estate property is broadly defined:

> The property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Congress intended that courts broadly construe the scope of § 541(a)(1), and that bankruptcy estate property encompass both tangible and intangible property, including causes of action existing at the time the debtor files his bankruptcy petition. H.R. Rep. No. 95–595, at 3678 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; S. Rep. No. 95–989, at 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. Moreover, as the Supreme Court held in *Segal v. Rochelle*, 382 U.S. 375 (1966), post-petition assets that are "sufficiently rooted in

---

[18] *Id.* at 6

the pre-bankruptcy past" are part of the bankruptcy estate. *Id.* at 380; *see also In re Andrews*, 80 F.3d 906, 910 (4th Cir. 1996) (holding that a debtor's post-petition payments received pursuant to a noncompetition agreement predating his bankruptcy petition were property of the bankruptcy estate because they were "plainly rooted in, and [grew] out of, [his] pre-petition activities"). This court has held that such assets include claims accruing post-petition that are based on events taking place prior to the commencement of the bankruptcy action. *Field v. Transcon. Ins. Co.*, 219 B.R. 115, 118-20 (E.D. Va. 1998) (holding that a debtor's bad faith claim against an insurer was property of his bankruptcy estate, even though the debtor did not request indemnification until eight months after he filed his bankruptcy petition, because the automobile accident for which the debtor needed coverage occurred four months before he filed his petition).

*Stackhouse v. Plumlee* (*In re Plumlee*), 236 B.R. 606, 611 (E.D. Va. 1999). From the Trustee's perspective, because § 541(a)(1) should be broadly construed, when the Trustee stands in Savage's shoes, the Trustee is entitled to the funds from the sale of the Property since Savage's right to those funds arose pre-petition.[19]

The Trustee then addressed Savage's argument that the proceeds from the sale of the Property were excluded from the bankruptcy estate pursuant to § 541(a)(5)(B) due to the sale closing more than 180 days after the Petition Date. The Trustee argued that the decisions in *Moody*[20] and *Baydush*[21] are based on facts inapposite to those of the case at bar, both decisions being predicated on disbursements from spendthrift trusts.[22] The Trustee relied on *In re Steen*, Case No. 10-10206, 2012 Bankr. Lexis 1656 (Bankr. D.S.D. Apr. 13, 2012), in arguing that the sale date of the Property is irrelevant, and that the pre-petition Agreement gave rise to an interest administrable by § 541(a)(1). The Trustee also relied upon *Field v. Transcon. Ins. Co.*, 219 B.R. 115, 118-20 (E.D Va. 1998), noting that the United States District Court for the Eastern District of Virginia had rejected Savage's argument that the date of sale was controlling to the

---

[19] *Savage v. Camardo*, ECF No. 10, Mem. Law 4.
[20] *Smith v. Moody* (*In re Moody*), 837 F.2d 719 (5th Cir. 1988).
[21] *Smith v. Baydush* (*In re Baydush*), 171 B.R. 953, 958-59 (E.D. Va. 1994).
[22] *Savage v. Camardo*, ECF No. 10, Mem Law 4.

10

application of § 541(a)(5)(A). Therefore, according to the Trustee, since Savage's right to the funds arose as a result of a pre-petition agreement, those funds were "sufficiently rooted in the pre-petition past" to constitute property of the bankruptcy estate.

### E.  Savage's Reply

In her response, Savage argued that the Trustee overstated the breadth of § 541. In support of her argument Savage cited *In re Sheeran*, 369 B.R. 910 (Bankr. E.D. Va. 2007), a case addressing a former spouse's interest in her ex-husband's retirement. *Id.* at 911-12. In *Sheeran*, Judge Adams relied upon the decision of *Stackhouse v. Kotz* in concluding that "any rights the debtor may have in her ex-husband's military retirement do not vest until payments are actually received by him." *In re Sheeran*, 369 B.R. at 921 (citing *Stackhouse v. Kotz* (*In re Kotz*), 146 B.R. 669, 670 (Bankr. E.D. Va. 1992)). Savage argued that her situation was analogous because her right to payment (*i.e.*, receive funds) was contingent upon a subsequent (post-petition) sale of the Property; as a result, her right to the funds did not vest at the time of the filing or within 180 days thereafter.

Building upon the argument, Savage cited both *Phillips v. Rinehart* (*In re Rinehart*), 352 B.R. 427 (Bankr. E.D. Va. 2005), and *Stackhouse v. Kotz* (*In re Kotz*), 146 B.R. 669 (Bankr. E.D. Va. 1992), for the proposition that property due one spouse from another pursuant to a divorce decree is not property of the bankruptcy estate where the post-petition payment does not vest prior to filing or within 180 days after filing.

In *Rinehart*, the trustee brought an action to determine the bankruptcy estate's interest in funds allegedly due the debtor from her former spouse and to compel the turnover of those funds

to the bankruptcy estate. *In re Rinehart*, 352 B.R. at 429. After first determining that the payments at issue were in the nature of alimony (**not a property settlement**), *id.* at 431, the Court held that that "post-petition spousal support payments unmatured on the date of the filing . . . are not property of the estate." *Id.* at 433.

Savage highlighted the distinction between the right to payment and the payment itself. She noted that for the bankruptcy estate to have a claim to the right to payment, a debtor must have the ability to enforce that claim. *See In re Kotz*, 146 B.R. at 671. Savage distinguished the present situation from that in *In re Steen*, Case No. 10-10206, 2012 Bankr. Lexis 1656 (Bankr. D.S.D. Apr. 13, 2012). In *Steen*, the debtor and her former spouse were divorced, and the former spouse appealed the divorce decree. The debtor filed for Chapter 7 relief during the pendency of the appeal, and more than 180 days after the petition was filed, the Appellate Court affirmed the divorce judgment. *Id.* at *1-2.

The trustee moved to compel the debtor to turnover nonexempt assets, including the property settlement and alimony amounts awarded under the decree. *Id.* at *3. The debtor argued that her unmatured interest in the amounts due under the divorce decree were not property of the bankruptcy estate because they had not vested within 180 days of filing the petition. *Id.* at *5. The Court disagreed, finding that the divorce decree was entered into prepetition and therefore the debtor's interest created by that decree was property of the bankruptcy estate. *Id.* at *12-13.

Savage argued that the rationale applied in the *Kotz* and *Reinhart* cases should control the outcome in the instant matter, and the contrary conclusion reached in *Steen* that "contingent interest in future payments are not excluded [from the estate]," *id.* at *16, is inapplicable here. As

a result, Savage argued that her "unvested" interest in Black's portion of the proceeds of the sale

of the Property is not property of the bankruptcy estate.

### F.  The Trustee's Letter Brief

In her letter brief, the Trustee relied upon a decision by the First Circuit Court of Appeals regarding the limiting nature of § 541(a)(5), *Lonstein v. Rockman* (*In re Lonstein*), 950 F.2d 77 (1st Cir. 1991). The Trustee argued that the *Lonstein* Court rejected the idea that the timing of the payment of an inheritance to a Chapter 7 debtor was material. *In re Lonstein*, 950 F.2d at 79-80.

*Lonstein* involved an involuntary Chapter 7 petition filed against a debtor who was the named legatee of a bequest in the will of a decedent who had died more than a decade prior to the filing of the petition, but whose estate was not distributed until a year after the filing of the petition. *In re Lonstein*, 950 F.2d at 78. the *Lonstein* Court found:

> Subsections 541(a)(1) and (a)(5)(A) focus on mutually exclusive time periods. Thus, under the express language of subsection 541(a)(1), any legal or equitable interest of the chapter 7 debtor in a bequest as of the *commencement* of the chapter 7 case is property of the chapter 7 estate. Bankruptcy Code § 541(a)(5)(A), on the other hand, is not implicated unless "the debtor acquires or becomes entitled to acquire" an "interest in property" by bequest "within 180 days after " the date of the commencement of the case.

*Id.* at 79 (emphasis in original). The Trustee argued that like the debtor in *Lonstein*, Savage attempts to deprive the individual sections of § 541 of their independent meaning and suggests that the distinction Savage draws between the right to receive the funds and the timing of the reception of the property is immaterial.

### G.  Savage's Final Letter Brief

Savage began her letter brief by once again asserting that "[t]he obligation to pay [the $59,600.00] was contingent upon the occurrence of a future event, namely the sale of the

Property."[23] Savage next focused on the nature of the Agreement, noting that the Trustee stands

in her shoes, and since "[s]he could not unilaterally change the terms of the [Agreement] and,

unless [Black] agreed to the changes, neither could the Trustee." Savage then argued that the

fundamental rules of contract construction prevent a court from rewriting unambiguous

contracts. The remainder of Savage's letter brief reiterated her position that the funds due to her

from Black were contingent upon a condition subsequent, namely the sale of the Property.

Savage concluded her argument by noting that the sale of the Property did not occur within the

180 days following the Filing Date, and therefore § 541(a)(5)(B) excludes the funds due Savage

under the Agreement from her bankruptcy estate.

### III.   Analysis

### A.  Summary Judgment

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which

incorporates Federal Rule of Civil Procedure 56. Rule 56 states "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 327 (1986). In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court held that it was

incumbent upon the judge to "not . . . weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986).

The Fourth Circuit Court of Appeals recently reiterated "the Court 'view[s] all facts and

reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Francis v.*

---

[23] *Savage v. Camardo*, ECF No. 27, Letter Br. 1.

*Allstate Ins. Co.*, 709 F.3d 362, 366 (4th Cir. 2013) (citations omitted). The initial burden is on the party moving for summary judgment to demonstrate the absence of an issue of material fact. *See Celotex*, 477 U.S. at 322. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Here, both parties are moving for summary judgment, and both parties have stipulated to all the relevant material facts. There are no material facts at issue, and the Court therefore finds that summary judgment is appropriate.

### B. The Property Interest

The filing of a case under § 301 of Title 11 of the United States Code creates the debtor's bankruptcy estate. *See* 11 U.S.C. § 541. While there are exceptions to what is considered property of the bankruptcy estate, *see id.* § 541(b), one thing is certain: "all legal and equitable interests of the debtor in property as of the commencement of the case" are property of the bankruptcy estate. *Id.* § 541(a)(1). On the Filing Date, Savage's bankruptcy estate came into existence and the Trustee was appointed pursuant to § 701. *Id.* § 701. Pursuant to § 704(a)(1) it is the duty of the Trustee to "collect and reduce to money the property of the estate for which [the] Trustee serves." *Id.* § 704(a)(1). In order for the Trustee to carry out her duty, the Court must first define what it was that Savage owned as of the Filing Date, so it may determine the extent of the property that constitutes the bankruptcy estate that the Trustee must administer.

Non-bankruptcy law, here that of the Commonwealth of Virginia, determines the scope of Savage's pre-petition property interests and whether the bankruptcy estate has a property interest in the funds obtained by the Trustee following the sale of the Property pursuant to the terms of the Decree. The Supreme Court of the United States has held:

Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.

. . . Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Buttner v. United States*, 440 U.S. 48, 54-55 (1979 (footnotes omitted) (quoting *Lewis v. Mfrs. Nat'l Bank*, 364 U.S. 603, 609 (1961)). The Court must therefore examine the Decree to determine the bankruptcy estate's right, if any, to the funds currently in the possession of the Trustee.

Prior to filing the petition, Savage voluntarily executed the Agreement in conjunction with her divorce from Black.[24] The Agreement was "affirmed, ratified and incorporated, but not merged" into the Decree.[25]

The Virginia Court of Appeals has discussed the effect of merging a separation agreement into a divorce decree, writing "Our previous decisions and those of the Supreme Court of Virginia draw a distinction among situations where an agreement is affirmed, where it is incorporated into a decree, or where . . . the agreement is 'affirmed, ratified, incorporated, but not merged' into the final decree." *Herring v. Herring*, 33 Va. App. 368, 373, 533 S.E.2d 631, 633 (2000). As to that distinction:

If the court accepts the agreement, its decree may merely approve, ratify or affirm the agreement, in whole or in part, without incorporating its provisions into the decree or ordering payment or compliance with its terms. In that situation, the decree merely constitutes judicial approval of a private bilateral contract, and the provisions of the support agreement do not have the full force and effect of a

---

[24] *See Savage v. Camardo*, Compl., Ex. A.
[25] *Id.*

court's decree and are not enforceable by the court's contempt powers. The court also has the option to incorporate by reference [the agreement], in whole or in part, as part of the final decree, Va. Code Ann. § 20-109.1, and retain jurisdiction to enforce compliance through its contempt powers.

*Fry v. Schwarting,* 4 Va. App. 173, 178, 355 S.E.2d 342, 345 (1987). Moreover:

Where . . . the circumstances are such that the incorporation of a property settlement in a decree, with directions that the parties perform all its obligations, merges the contract in the decree, the party who desires enforcement must enforce the decree and not the agreement itself. In contrast, [w]here the circumstances are such that the agreement, although incorporated or approved in the decree, is not merged therein, the parties may enforce it by suing on the agreement rather than on the judgment.

*Herring*, 33 Va. App. at 373-74, 533 S.E.2d at 633-34 (citations and quotations omitted).

Therefore, where a property settlement agreement such as the one entered into by Savage and Black is incorporated but not merged into the final decree, under Virginia jurisprudence, it is enforceable at law as though it were a contract. The Court finds additional support for this proposition from the Supreme Court of Virginia, which has held "[p]roperty settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." *Southerland v. Estate of Southerland*, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995) (citations omitted). Contracts confer benefits and burdens, rights and obligations upon the parties to that particular contract. In this case, Savage and Black were bound by the Agreement, and each had the rights set out in the Agreement as of the date of the Agreement.

The Court must interpret the Agreement to determine what interest Savage had in the proceeds of the Property. If she had no interest, only an expectancy, then the bankruptcy estate has no interest in the proceeds. If she had an interest at the time of the Filing Date, then that interest (whatever it was and no matter how remote) passed to the bankruptcy estate.

18

Savage correctly argues that interpreting contracts, "[w]e adhere to the 'plain meaning' rule in Virginia: '[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties.'" *Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) (quoting *Globe Co. v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)). The Court finds as a finding of fact and conclusion of law that the Agreement is plain on its face and not subject to ambiguity.

The Agreement provides "Husband agrees to pay Wife the sum of $57,000 for her share of the businesses, including the business equipment, the sum shall be paid to Wife from Husband's share of the net proceeds of the home at the time of closing."[26] Additionally, "Husband shall retain ownership of the Farm Bureau Life Insurance Polic[ies] . . . . Husband shall pay to Wife $2,600.00 from his share of the proceeds from the sale of the house for her share of the cash value of the policies."[27] As part of the Agreement, these provisions were affirmed, ratified, and incorporated into the divorce decree.

Savage argues that she had a vested right to future payment subject to a condition precedent that did not occur until more than 180 days after the Filing Date, thereby excluding the funds held by the Trustee from the bankruptcy estate pursuant to § 541(a)(5)(B). For that to be the case, it would be necessary to find that Savage did not have **any** cognizable interest under the Agreement in the Property or the proceeds, and that Black had no corresponding obligation. The Virginia Court of Appeals has held that "[u]nder Virginia law, then, *any interest* a spouse may have in marital property is an inchoate right that becomes vested only upon entry of a decree of

---

[26] *Savage v. Camardo*, Compl., Ex. A 5.
[27] *Id.* at 7.

equitable distribution in a divorce proceeding." *McDuffie v. Commonwealth*, 49 Va. App. 170, 176-77, 638 S.E.2d 139, 142 (2006) (emphasis added). The United States District Court for the Eastern District of Virginia has held that

> Once the right to equitable distribution vests, the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution. . . . Thus, in a bankruptcy proceeding, which is commenced after the vesting of equitable distribution rights, only the debtor's inchoate equitable interest in the marital estate becomes part of the bankruptcy estate. The interest is then made choate by the equitable distribution proceeding.

*Roberge v. Roberge* (*In re Roberge*), 188 B.R. 366, 369 (E.D. Va. 1995).

Savage's inchoate right under the Agreement was a chose in action. The Supreme Court of Virginia instructs that "[a] chose in action is defined . . . as a personal right not reduced into possession, but recoverable by a suit at law.'' *First Nat'l Bank v. Holland*, 99 Va. 495, 503-04, 39 S.E. 126, 129 (1901). More recently, that Court held "[a] chose in action is intangible personal property." *Huaman v. Aquino*, 272 Va. 170, 175, 630 S.E.2d 293, 297 (2006) (citing *Teed v. Powell*, 236 Va. 36, 40, 372 S.E.2d 131, 134 (1988); *Iron City Sav. Bank v. Isaacsen*, 158 Va. 609, 628, 164 S.E. 520, 526 (1932)).[28] Furthermore, "[a] chose in action is 'owned' by the possessor of the right to recover." *Huaman*, 272 Va. at 175, 630 S.E.2d at 297. Lastly, "[i]f rights are vested or if possibilities are distinctly connected with the interest or property they may be sold." Theophilus Parsons, 1 *The Law of Contracts* 524 (Samuel Williston, ed., 8th ed. 1893).

When the Agreement was affirmed, ratified, and incorporated into the Decree, Savage acquired a vested inchoate interest in $59,600.00 of proceeds from the sale of the Property

---

[28] "That which in every sense is nonexistent, a nonentity, cannot be sold, for it is not property, but it need not have, in every sense, a perfect, tangible existence to be regarded in law as capable of ownership. So long as it has a potential existence it is enough." *Wiant v. Hays*, 38 W. Va. 681, 18 S.E. 807 (W. Va. 1893).

whenever that sale occurred. That vested inchoate interest to receive a payment upon a condition mandated by the Agreement is an intangible property right. The Debtor therefore had a chose in action at the time of the entry of the Decree. That chose in action was vested in Savage when she filed her bankruptcy petition. It vested in the bankruptcy estate by operation of § 541. There is no exclusion to this vesting that would benefit Savage.

### IV.   Conclusion

Savage's inchoate right to the funds, her chose in action, vested in her upon execution of the Agreement and entry of the Decree. Section 541(a) states the bankruptcy "estate is comprised of all of the following property, wherever located and by whomever held: . . . all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It became property of the bankruptcy estate upon her bankruptcy filing. This property interest was neither exempted nor abandoned, and it remains property of the bankruptcy estate. This inchoate right became choate upon the sale of the Property by the Trustee. The conversion of the inchoate property right into proceeds did not deprive the bankruptcy estate of its interest in the property. The asset (proceeds) remain property of the bankruptcy estate, and the Trustee is therefore entitled to administer the asset on behalf of the bankruptcy estate pursuant to 11 U.S.C. § 541(a). Therefore, the Trustee's Motion for Summary Judgment should be granted. Savage's Motion for Summary Judgment should be denied.

A separate Order will follow.

Upon entry of this Memorandum Opinion, the Clerk of Court is directed to serve via United States Mail a copy of this Memorandum Opinion to: Tracy Marie Savage, 1420 Glendale Avenue, Chesapeake, VA 23323; Kelly M. Barnhart, Esq., Roussos, Lassiter, Glanzer &

Barnhart, 580 East Main Street, Suite 300, P.O. Box 3217, Norfolk, VA 23514; Carolyn L.

Camardo, Esq., Chapter 7 Trustee, 5101 Cleveland Street, Suite 200, Virginia Beach, VA 23462;

John C. McLemore, Esq., John C. McLemore, P.C., 500 East Main Street, Suite 1210, Norfolk,

VA 23510, by first-class mail, postage prepaid.

Dated:

July 9, 2013

FRANK J. SANTORO
United States Bankruptcy Judge